NOT DESIGNATED FOR PUBLICATION

No. 114,651

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RONNIE DETHERAGE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID KAUFMAN, judge. Opinion filed August 5, 2016. Affirmed.

Submitted for summary disposition under K.S.A. 2015 Supp. 21-6820(g) and (h).

Before MALONE, C.J., GREEN and GARDNER, JJ.

*Per Curiam*:  For the sake of clarity, we shall set forth what is not disputed. First, Ronnie Detherage timely appealed the revocation of his probation and requested summary disposition without full briefing under Kansas Supreme Court Rule 7.041(b) (2015 Kan. Ct. R. Annot. 67). We granted his request after the State filed a response concurring that summary disposition was appropriate for this appeal. Second, Detherage does not contend that the trial court should have considered imposing an intermediate sanction before revoking his probation. See K.S.A. 2015 Supp. 22-3716(c). In sum, what remains is that Detherage simply contends that the trial court abused its discretion by revoking his probation. We conclude that the trial court did not abuse its discretion when it imposed the underlying prison sentence in this matter because it had afforded Detherage two opportunities to complete his probation. Thus, we affirm.

1

On March 28, 2013, Detherage pled guilty to one count of criminal possession of a firearm by a convicted felon. The trial court sentenced Detherage on June 19, 2013. Based on his criminal history score of "F," the trial court ordered him to serve 18 months' probation and imposed the mitigated underlying prison sentence of 11 months.

On December 4, 2013, Detherage's intensive supervision officer filed an affidavit alleging that Detherage had committed 11 violations of his probation, including that in November 2013, he failed to report and to attend drug and alcohol treatment in November 2013. The affidavit also claimed that he had not maintained full-time employment. At a hearing on February 21, 2014, Detherage admitted to committing nine of the violations and pled no contest to one other violation. Detherage explained to the trial court that he could not work full time because he was 63 years old and had health issues. The trial court ultimately revoked and reinstated Detherage's probation. It also removed Detherage from community corrections and assigned him to court services, which lowered his level of supervision so that he could alter his employment status and comply with the terms of his probation.

On June 6, 2014, Detherage's court services officer filed an affidavit asserting that Detherage had violated the terms of his probation by failing to report, failing to pay his court costs and fines, and failing to attend mental health treatment. At the revocation hearing held on September 19, 2014, the trial court withdrew the allegation for failing to pay court costs and fines, and Detherage admitted to the remaining allegations. Detherage told the trial court that he was currently living in Stafford County and was unable to travel to Sedgwick County to report. The trial court ultimately revoked, reinstated, and extended his probation by 5 months. It also modified his probation to allow either Barton, Reno, or Sedgwick County to supervise his probation so Detherage would not have to drive a long distance to report.

Three weeks after Detherage's second probation violation hearing, his court services officer filed an affidavit alleging that Detherage had failed to report for his reinstatement intake appointment on October 3, 2014. Detherage admitted to the violation at a hearing held on August 13, 2015. The trial court revoked his probation and imposed his underlying prison sentence. In doing so, the trial court gave the following reasons for revoking Detherage's probation:

"Well, look, you know, I'm gonna [*sic*] revoke the probation and impose the sentence; and I don't want to beat a dead horse here, but, you know, there's an old saying, If something doesn't make sense it's 'cause [*sic*] it doesn't make sense, and, you know, first of all, I have a reputation as a judge for helping probationers. I know that's true. That's just all there is to it. That doesn't make me a good or bad person 'cause [*sic*] you don't know my heart, but I'm looking at this journal entry from September 19th, 2014. I modified the conditions of probation saying, quote, The Court approves supervision of probation through either Reno or Barton Counties.

. . . .

". . . And I'm not interested in any response to that because I know I'm gonna [*sic*] hear something on why that didn't occur. And then, okay, so if somebody can't report to probation in July, the notion that there's no contact, there's no attempts, and all this time passes, I mean—Excuse me, from October to July—you know, it—it's really almost so elementary it's almost like building blocks in first grade, and it's almost insulting to everybody in this courtroom to have to justify this because it's so patently obvious. Mr. Detherage isn't amenable to probation. He's not a good guy or a bad guy, he's just not amenable to probation, and Mr. Baber's comments are spot on. I have no animus, no animosity, no moral judgment of Mr. Detherage, but what are we doing here? Seriously?

. . . .

". . . Failure to report is a pretty strong indication that you're not amenable to probation. And again, it's mind-boggling to me that assuming there was reporting done in Reno County, which I would have no idea, assuming that's true, why wouldn't you just do

3

it along with this case as well? And if it was an issue to report, all that has to be done is call Adult Probation and say, Jerry, I'm having problems reporting. This is the issue. What can you do for me? It's just the constant dance of deception in the criminal justice system as if I'm supposed to come to court, I look at this damning history here, but Judge, there's really a good explanation. Unfortunately, at age 56 I'm too stupid to understand decent explanations anymore."

We have stated many times that probation is an act of grace by the sentencing judge and, unless otherwise required by law, is a privilege rather than a matter of right. *State v. Gary*, 282 Kan. 232, 237, 144 P.3d 634 (2006). A trial court's decision to revoke probation usually involves two steps: (1) a retrospective factual question of whether the probationer has violated a condition of probation; and (2) a discretionary determination by the sentencing authority of whether the violation warrants revocation. *State v. Skolaut*, 286 Kan. 219, Syl. ¶ 4, 182 P.3d 1231 (2008).

Since the decision to revoke probation rests in the trial court's sound discretion, appellate courts generally review such a decision under the abuse of discretion standard. *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). Abuse of discretion means that the decision was (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Cameron*, 300 Kan. 384, 391, 329 P.3d 1158, *cert. denied* 135 S. Ct. 728 (2014). Detherage carries the burden of showing that the trial court abused its discretion. See *State v. Stafford*, 296 Kan. 25, 45, 290 P.3d 562 (2012).

Here, the trial court went to great lengths to help Detherage complete his probation. After Detherage stipulated to 10 probation violations, the trial court *lessened* his level of supervision by removing him from community corrections and placing him with court services so he could vary his employment as needed. Despite this accommodation, he eventually violated the terms of his probation again by failing to attend required classes and by failing to report. Surprisingly, the trial court further

4

accommodated Detherage by allowing him to complete his probation in either Barton, Reno, or Sedgwick County; yet, Detherage failed to immediately report afterwards.

Under these circumstances, we cannot see how the trial court's decision was arbitrary, fanciful, or unreasonable when the trial court gave Detherage several opportunities to complete his probation, but he failed to avail himself of the generous grace afforded to him by the trial court.

Affirmed.